[Civ. No. 9897.   Third Dist.   July 12, 1961.]

ANDREW S. NICHOLSON, Respondent, v. ROBERT F. McDONALD, as Administrator, etc., Appellant.

James S. Eddy and Perkins, Carr & Eddy for Appellant.

Stanley J. Gale and Lawrence M. Goldstein for Respondent.

PEEK, J.—Defendant McDonald appeals from a judgment in favor of plaintiff Nicholson in an action for conversion of certain personal property comprising tools and fixtures used in the operation of an automotive repair shop.

On or about September 1, 1953, McDonald sold his automobile agency, which was located in the city of Davis, to one Lowell Houghton, together with all of the equipment. As a part of the sale Houghton executed two promissory notes, one in the sum of $4,500 and the other in the sum of $6,600, both of which were secured by a chattel mortgage on the personal property located on the premises. The $4,500 mortgage was executed on September 1, 1953, and contained a clause to the effect that it was also "security for the repayment of sums that may be advanced, expenditures that may be made, or indebtedness or obligations that may be incurred subsequent to the execution hereof." This encum-

brance was recorded. The $6,600 chattel mortgage shows two dates on its face, September 1 and September 28. However, the notarial acknowledgment shows the date of August 28. This document was never recorded.

In June or July of 1956, Houghton executed a bill of sale to Nicholson, covering all of the personal property which was security for the promissory notes previously given to McDonald. Houghton discussed with McDonald his proposed sale to Nicholson, and during this discussion he told McDonald he would use the proceeds of the sale to pay off the balance of his outstanding indebtedness. McDonald stated that he did not desire to be paid off in a lump sum, but would rather have Houghton continue his monthly payments, as provided in their original agreement. The sale was conducted in compliance with the requirements of the Bulk Sales Law (Civ. Code, § 3440.1). During the period of publication, McDonald made no claim. Immediately following the sale, Nicholson leased the property back to Houghton.

In November or December of 1957, Houghton became delinquent in his payments to McDonald on the mortgages and to Nicholson on the lease. In January of 1958, Houghton's business was closed and the property seized by the sheriff on a levy against Houghton initiated by the State Board of Equalization. On the 24th of that month, both Nicholson and McDonald filed third-party claims, each claiming the equipment covered by the mortgages and the bill of sale. Neither claim was resisted by the Board of Equalization and the sheriff subsequently turned over the property and possession of the premises to McDonald, who still retains possession, claiming it as his own.

In February 1958, Houghton filed a petition in bankruptcy in which he listed McDonald as an unsecured creditor and the sum still owing on the two mortgages as something less than $2,000. On May 29, 1958, Houghton was discharged in bankruptcy. Prior to the discharge, Nicholson, through his attorney, made several demands upon McDonald to turn over possession of the personal property. McDonald ignored his requests, except as to certain property not included as security in the chattel mortgages.

On June 20, 1958, McDonald filed an action in the Superior Court of Yolo County to foreclose the two chattel mortgages. On April 1, 1959, he obtained a judgment in his favor, and on April 10 of that year the property was sold to him by the sheriff.

In the present proceeding, the trial court, pursuant to the facts as summarized, found that the original sale to Nicholson came within the provisions of the Bulk Sales Law (Civ. Code, § 3440.1) ; that McDonald had waived his rights under the recorded chattel mortgage; that McDonald's refusal to give up possession of the property on Nicholson's demand amounted to a conversion of said property; that he had no rights under the unrecorded mortgage, since Nicholson had no knowledge of its existence; and that even if it could be considered an advancement under the provisions of the recorded mortgage, McDonald could make no claim, since his rights under that instrument had been waived.

Although several contentions are made by McDonald on appeal they are, in the main, attacks upon the sufficiency of the evidence to support the previously mentioned findings. It would appear, however, that if it can be said that the evidence supports the finding of the trial court that the sale from Houghton to Nicholson was within the terms of the Bulk Sales Law and that the terms thereof were complied with by Nicholson, and if it may be said that the evidence supports the further finding that McDonald waived his rights under the recorded mortgage, then the remainder of his contentions become immaterial.

The portion of section 3440.1 of the Civil Code pertinent to the issues raised is that a sale other than in the ordinary course of business, such as the sale by Houghton to Nicholson, is conclusively presumed to be fraudulent and void as to existing creditors of the seller unless at least 10 days before the consummation of the sale the seller records and publishes a notice of the intended sale, the address of the parties involved, a statement of the character of the property to be sold, and the date and place where the consideration is to be paid.

There can be no question but that the sale here was one within the provisions of the said section and that the evidence amply sustains the finding that a proper notice was recorded and published as prescribed. Necessarily, therefore, McDonald's contention that the finding of the trial court in this regard is not supported is without merit.

McDonald, however, says in effect that even if this be true the sale was still fraudulent, since the property was immediately leased back to Houghton and therefore, there was no change of possession as provided in section 3440 of the Civil Code. The pertinent portions of that section pro-

vide that every transfer of personal property by one in possession and not accompanied by an immediate change in possession is ''conclusively presumed fraudulent and void'' as against his creditors.

There can be no question but that the Legislature, in enacting the Bulk Sales Law, sought to prevent a particular type of sale; i.e., a surreptitious sale or encumbrance of stock-in-trade to defraud or defeat the claims of creditors. (See 37 C.J.S. § 471 et seq., p. 1320.) Thus, the section specifically provides the means by which a creditor receives knowledge of the pendency of such a sale and hence, may take appropriate means to protect himself. Section 3440 contains no such provision relative to notice.

It would therefore appear that when a sale is such that it comes within the provisions of section 3440.1 and the requisites thereof have been met, section 3440 has no application. This would appear so since by compliance with the provisions of section 3440.1, a creditor under such circumstances is as fully protected as the Legislature has deemed necessary. Furthermore, in the present case there can be no question as to McDonald's knowledge of the proposed sale and his opportunity to protect himself, since he testified to a discussion with Houghton concerning the same in which he declined to be paid out of the proceeds of the sale and agreed with Houghton to be paid on a monthly basis.

The next contention made by McDonald relates to the sufficiency of the evidence to support the finding of the trial court that he waived his rights under the mortgage. As noted, the record discloses that Houghton had discussed the proposed sale with McDonald, and had informed him that he would pay off the outstanding indebtedness out of the proceeds; McDonald, however, had declined, stating that he did not desire to be paid off at that time, but would rather have Houghton continue monthly payments until the indebtedness had been paid. In view of such evidence, it cannot be said that the findings of the court are not supported by the record.

Since the record sustains the findings of the trial court that McDonald waived his rights under the recorded mortgage, it follows that he had no rights under the unrecorded mortgage, (1) because Nicholson had no actual or constructive notice of its existence, and (2) because even assuming that the money lent could be considered as an advancement

under the terms of the recorded instrument, McDonald, for the reasons above stated, had no rights under that instrument.

■■ By reason of what we have heretofore said, McDonald had no legal right to retain the property in his possession, and therefore his refusal to give up possession on Nicholson's demand amounted to conversion. (48 Cal.Jur.2d §§ 20 and 22, pp. 557, 562.)

■ McDonald further contends that issues in the instant action are res judicata by reason of the foreclosure proceeding previously taken by him. The doctrine of res judicata was not raised by the pleadings, nor was any evidence on this issue admitted during the trial. Although it is true that the prior judgment was admitted, this was only for the purpose of showing chain of title, and here it should be noted that the admission thereof was subject to a motion to strike and in fact was stricken by the trial court in its memorandum opinion.

What has heretofore been said in discussion of the issues raised by McDonald makes unnecessary further discussion of the remaining issues.

Judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied August 11, 1961, and appellant's petition for a hearing by the Supreme Court was denied September 6, 1961.