[No. B084674. Second Dist., Div. Three. Mar. 28, 1996.]

NICHOLAS MONASTRA, Plaintiff and Appellant, v.
KONICA BUSINESS MACHINES, U.S.A., INC., et al., Defendants and
Respondents.

COUNSEL

George S. L. Dunlop for Plaintiff and Appellant.

Cutler & Cutler, Richard B. Cutler and Claudia Ribet for Defendants and Respondents.

OPINION

CROSKEY, J.—In this case of first impression, we are called upon to determine whether compliance with the notice requirements of California's Bulk Sales Act (Cal. U. Com. Code, § 6101 et seq.; formerly the Bulk

Transfer Act)[1] insulates a bulk sale from attack under the Fraudulent Transfer Act and Civil Code section 3440,[2] even if the transfer is one of those

---

[1] At the time of the events sued upon in this case, bulk sales in California were subject to the California's version of the Uniform Bulk *Transfer* Act (Cal. U. Com. Code, §§ 6101-6111), which differed in fundamental respects from the official text of the act (Cf. 2C West's U. Laws Ann. (1991) U. Com. Code, §§ 6-101 through 6-111, pp. 50-108), and, in fact, was essentially a restatement and revision of California's former bulk sales law, former Civil Code section 3440.1. (See introductory com., 23B West's Ann. Cal. U. Com. Code (1964 ed.) div. 6, pp. 734-735.) Effective January 1, 1991, shortly after the events sued upon, California substantially amended its bulk sales laws to correspond generally with the substantially amended 1987 official text of the uniform act. Among other changes, (1) the name of the act is now changed to "Uniform Commercial Code—Bulk *Sales*" (Cal. U. Com. Code, § 6101; cf. former § 6101); (2) the amended act applies to sales not in the ordinary course of business of "more than half" of the seller's inventory and equipment, where the former act applied to sales of an imprecisely defined "substantial part" of the seller's assets (§ 6102, subd. (a)(3); cf. former § 6102, subd. (1)); (3) the Bulk Sales Act applies to a narrower class of sellers than did the former act (§ 6103, subd. (a)(1); cf. former § 6102, subd. (3)); (4) the Bulk Sales Act does not apply to the creation of security interests as did the Bulk Transfer Act (§ 6103, subd. (c)(1); cf. former § 6102, subd. (5)); and (5) the Bulk Sales Act requires a longer notice period than was required by the former act (§ 6105; cf. former § 6107, subd. (2)).

Although the 1991 amendments to the act were substantial, none of them affect the issues in this case. Our discussion thus applies equally to the present Bulk Sales Act and the former Bulk Transfer Act, and we shall therefore refer to the act in this opinion by its present name and use former names and section numbers only as necessary for narrative clarity.

Under both the present Bulk Sales Act and the act as enacted at the time of the events sued upon, the buyer in a bulk sale is required to record notice of the proposed sale at the county recorder's office in the county where the assets are located and publish notice of the sale one time in a newspaper of general circulation in the judicial district where the assets are located. Under the present act, both the required recordation and the required publication must occur 12 days before the sale; under the former act, recordation was required 10 days before the sale, and publication was required 5 days before the sale. (Cal. U. Com. Code, §§ 6104, 6105; former §§ 6105, 6107.) Under the former act, a noncomplying bulk sale was "fraudulent and void against a creditor of the transferor." (Cal. U. Com. Code, former § 6105.) Under the present act, the general rule is that the buyer in a noncomplying bulk sale is liable to a damaged creditor for compensatory damages. (Cal. U. Com. Code, § 6107.) It is undisputed that the bulk sale which is challenged in this case was made in compliance with the act as then enacted.

[2] The Fraudulent Transfer Act (Civ. Code §§ 3439-3439.12) and sections 3440 through 3440.9 of the Civil Code, concerning "Conveyance of Personal Property Without Delivery," form chapters 1 and 2 of title 2 ("Fraudulent Instruments and Transfers") of Part 2 ("Special Relations of Debtor and Creditor") of division 4 ("General Provisions") of the Civil Code. When referred to collectively, these two chapters shall be referred to as "the fraudulent transfer laws."

Civil Code section 3439.04 provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: [¶] (a) with actual intent to hinder, delay, or defraud any creditor of the debtor. [¶] (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: [¶] (1) Was engaged or was about to engage in a business or a

fraudulent or constructively fraudulent transfers proscribed in the latter statutes. We answer the question in the negative.

Nicholas Monastra appeals from a summary judgment entered against him and in favor of two of the eight named defendants in Monastra's action to set aside fraudulent transfers and establish a constructive trust and for damages for fraud and conspiracy. Monastra brought suit on these claims against Master Technology, Inc. (hereafter, Master Technology), John Gorden and Linda L. Gorden (hereafter, collectively, Gorden), Konica Business Machines, U.S.A., Inc. (Konica), Digitec Office Products, Inc. (Digitec), Earl D. McCool, Humberto Gutierrez and Stacy Gutierrez. Master Technology and Gorden are judgment debtors of Monastra under a judgment rendered in a previous lawsuit; Konica, Digitec, McCool, and the Gutierrezes are parties to whom Master Technology and Gorden transferred substantially all of Master Technology's assets, as well as certain real property belonging to Gorden, while the previous suit was pending.

---

transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or [¶] (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

Civil Code section 3439.05 provides: "A transfer or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

Civil Code section 3439.07 provides: "(a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 3439.08, may obtain: [¶] (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; [¶] (2) An attachment or other provisional remedy against the asset transferred or its proceeds . . . [¶] (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, the following: [¶] (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds. [¶] (B) Appointment of a receiver to take charge of the asset transferred or its proceeds. [¶] (C) Any other relief the circumstances may require. . . ."

Civil Code section 3439.08 provides: "(a) A transfer or an obligation is not voidable under subdivision (a) of Section 3439.04 [intentional fraud], against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee. . . . [¶] (d) Notwithstanding voidability of a transfer . . . under this chapter, a good faith transferee . . . is entitled, to the extent of the value given the debtor for the transfer . . . , to the following: [¶] (1) A lien on or a right to retain any interest in the asset transferred. [¶] (2) Enforcement of any obligation incurred. (3) A reduction in the amount of the liability on the judgment."

Civil Code section 3440 provides: "(a) Except as provided in this chapter, every transfer of personal property made by a person having at the time the possession of the property, and not accompanied by an immediate delivery followed by an actual and continued change of possession of the property, is void as against the transferor's creditors (secured or unsecured) at the time of the transfer and those who become creditors while the transferor remains in possession and the successors in interest of those creditors, and as against buyers from the transferor for value in good faith subsequent to the transfer."

The trial court, concluding that compliance with the Bulk Sales Act precluded recovery on a fraudulent transfer claim, granted summary judgment in favor of Konica and Digitec. However, we hold that the Bulk Sales Act and the fraudulent transfer laws represent cumulative independent statutory schemes, and compliance with one does not satisfy the requirements of the other. We therefore reverse.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

Prior to 1985, Monastra was the owner and operator of City Copier Services, Inc., and Gorden was the president and major shareholder of Master Technology. Both companies were in the business of selling, renting and servicing copying machines, and both were authorized dealers of Konica products. In 1985, Monastra's company merged with Master Technology. However, within a year of the merger, Monastra was forced out of the new company. He thereafter sued for breach of contract, fraud and other causes of action and eventually obtained a judgment in the approximate amount of $400,000.

In July of 1990, prior to the trial of Monastra's lawsuit, Gorden and Master Technology entered into an agreement with Konica to transfer all of the assets of Master Technology, including its trade name, "Copymasters," and its good will, to Digitec, which was to be a new corporation formed as a wholly owned subsidiary of Konica. As required by the Bulk Sales Act (former Bulk Transfer Act, Cal. U. Com. Code, former § 6101 et seq.), notice of the transfer of assets from Master Technology to Digitec was published once in a newspaper of general circulation in the judicial district where Master Technology was located and was filed in the county recorder's office. However, Gorden continued to serve as president of Digitec, Digitec took over the "Copymasters" trade name immediately after Master Technology abandoned it, and in every other respect, company operations remained indistinguishable from operations before the buy-out, so that the business community, including Digitec's own employees, was generally unaware that any change had occurred. In particular, the defendants never informed Monastra of the buy-out, although they were engaged in ongoing communication with him concerning the prior litigation, which was then pending.

The agreement of purchase and sale of assets between Konica and Master Technology recited that the price paid for Master Technology's assets was

---

[3]The history of this case from 1985 on is taken in part from the parties' statements of undisputed facts. Matters occurring before 1985 are taken from facts related in the unpublished opinion of Division Five of this court in *Monastra* v. *Copy America, Inc.* (Aug. 27, 1992) B055285, in which the Court of Appeal reinstated a jury verdict in favor of Monastra in his first lawsuit against Master Technology and Gorden.

$600,000, although Monastra believed the company's true value was approximately $3 million. It also appears from the contract of sale and attached exhibits that only $224,000 of the specified purchase price was actually paid to Master Technology; the remainder was paid to Gorden personally as back salary and in other forms. Gorden also received $270,000 in exchange for his covenant not to compete and was guaranteed an annual salary of $120,00 for three years, with the opportunity for bonuses in unspecified amounts.

In September of 1992, after Monastra obtained a judgment against Gorden and Master Technology, he finally was informed of the transfer of assets. He also learned at this time that several parcels of real property belonging to Gorden personally had been transferred to Gorden's mother- and father-in-law and to Gorden's children. On July 15, 1993, Monastra filed suit to avoid all of the transfers of assets belonging to Master Technology and Gorden as fraudulent and to impose a constructive trust on all of the transferred assets. On December 17, 1993, Konica and Digitec moved for summary judgment, contending their compliance with the Bulk Sales Act immunized the transfers of Master Technology assets from attack under the Fraudulent Transfer Act and Civil Code section 3440. The trial court agreed with the arguments of Konica and Digitec and granted summary judgment as to them on March 14, 1994. This timely appeal followed.

## CONTENTIONS

Monastra contends that: (1) contrary to the trial court's ruling, compliance with the Bulk Sales Act does not immunize a *fraudulent* bulk transfer from challenge under the Fraudulent Transfer Act (Civ. Code, § 3439 et seq.) or Civil Code sections 3440 et seq.; (2) there are triable issues of fact as to whether the challenged transfers were fraudulent; (3) the defendant transferees are liable to Monastra for conspiracy; (4) constructive trust is an appropriate remedy; and (5) Monastra's claims are not barred by the statute of limitations.[4]

## DISCUSSION

### 1.  Standard of Review

▪    Summary judgment is properly granted when the evidence in support of the moving party establishes that there is no material issue of fact

---

[4]The defendants dispute each of Monastra's contentions and also contend the appeal is frivolous and request sanctions. We need not address this contention, inasmuch as we find that Monastra's arguments have substantial merit and the summary judgment must be reversed.

requiring a trial. (Code Civ. Proc., § 437c, subd. (c); *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Materiality depends upon the issues in the case; evidence which does not relate to a matter in issue is not material. (*People* v. *Hill* (1992) 3 Cal.App.4th 16, 29 [4 Cal.Rptr.2d 258]; *Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600, 604-605 [208 Cal.Rptr. 899].)

██ Here, the defendants do not dispute Monastra's factual claims. Rather, they contend there is no *material* issue of fact to be tried, because, as matter of law, their compliance with the Bulk Sales Act insulates them from any liability which might otherwise be established by the facts which Monastra alleges to be true. The question of whether, and how, the bulk sales and fraudulent transfer statutes apply to the undisputed facts is a question of law which we review independently. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Coca-Cola Bottling Co.* v. *Lucky Stores, Inc.* (1992) 11 Cal.App.4th 1372, 1377 [14 Cal.Rptr.2d 673]; *Tobin* v. *Oris* (1993) 3 Cal.App.4th 814, 825 [4 Cal.Rptr.2d 736].)

*2. Compliance With the Bulk Sales Act Does Not Insulate a Fraudulent Transfer From Attack Under the Laws Governing Such Transfers*

*a. Summary of Controlling Statutes*

Three separate statutory schemes are involved in this case: the Fraudulent Transfer Act (Civ. Code, §§ 3439-3439.12), Civil Code sections 3440 through 3440.9, and the Bulk Sales Act (Cal. U. Com. Code, §§ 6101-6111).

Under the Fraudulent Transfer Act (Civ. Code, §§ 3439-3439.12), a transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due. (Civ. Code, § 3439.04; *Reddy* v. *Gonzalez* (1992) 8 Cal.App.4th 118, 122-123 [10 Cal.Rptr.2d 55].) A transfer by a debtor is fraudulent as to creditors whose claims arose *before* the transfer if the debtor made the transfer (1) without receiving reasonably equivalent value in exchange, and (2) either (a) was insolvent at the time of the transfer, or (b) became insolvent as a result of the transfer. (Civ. Code, § 3439.05.) A creditor who is damaged by a transfer

described in either section 3439.04 or section 3439.05 can set the transfer aside or seek other appropriate relief under Civil Code section 3439.07. (See fn. 2, *ante.*) A transfer that would otherwise be voidable as intentionally fraudulent under section 3439.04, subdivision (a), is not voidable against a transferee who took in good faith and for a reasonably equivalent value. (Civ. Code, § 3439.08, subd. (a).)

Under Civil Code section 3440, a transfer of most forms of personal property that is not accompanied by delivery and a continuous change of possession is void as against the transferor's creditors at the time of the transfer, those who become creditors while the transferor remains in possession and bona fide purchasers of the same goods from the transferor after the transfer. Section 3440 does not apply to certain categories of assets (including things in action, growing crops and ships or cargoes at sea) which are listed in section 3440.1, and also does not apply if, before the transfer of any asset, the transferor or the transferee filed with the Secretary of State a financing statement respecting the transfer pursuant to California Uniform Commercial Code section 9401 and following and published notice of the transfer in a newspaper of general circulation. (Civ. Code, § 3440.1, subd. (h).)

The Bulk Sales Act applies to sales, not in the ordinary course of business, of more than half of the seller's inventory and equipment, by sellers whose principal business is the sale of inventory from stock, including those who manufacture what they sell, and by the owners of restaurants. (Cal. U. Com. Code, §§ 6102, subd. (a)(3); 6103.) The act requires the *buyer* in bulk, at least 12 days before the sale, to record notice of such a sale in the county recorder's office in the county where the seller or subject assets are located and to publish notice of the sale at least once in a newspaper of general circulation in the judicial district where the seller or assets are located. (Cal. U. Com. Code, §§ 6104, 6105.) With certain exceptions, a buyer who does not comply with sections 6104 and 6105 is liable to a creditor of the seller for damages in the amount of the creditors' claim, reduced by any amount the creditor would not have realized even if the buyer had complied with the Act. (Cal. U. Com. Code, § 6107, subd. (a).)

b. *Application of the Fraudulent Transfer Laws to Bulk Sales*

The defendants argue that, "where, as here, the Bulk [Sales] Act is complied with, *there can be no fraud as a matter of law.*" (Italics added.) This, quite honestly, is a preposterous assertion. It amounts to saying that, if notice of a proposed bulk sale is published and recorded as required in the

act, the parties to the sale may, with complete impunity, place all of the seller's assets out of the reach of any creditor who is unwary enough to miss the *single* publication and the notice in the county recorder's office, and it makes no difference if this is done with the specific intent to defraud such creditor.

We cannot accept this as a principle of law. It simply does not comport with this court's sense of justice or sound public policy to say that if A gives notice that he is about to cheat B, he then has a license to do so.

Moreover, more than our mere visceral reaction supports our rejection of the defendants' argument. Contrary to the defendants' claims, nothing in the language, the historical background or the underlying policies of the bulk sales laws or the fraudulent transfer laws suggests that they are mutually exclusive. In addition, while there is a paucity of judicial authority on the question, the commentators on the Bulk Sales Act generally assume without discussion that it supplements and does not supersede existing fraudulent transfer laws. One commentator has stated that ". . . compliance with a bulk sales law does not necessarily immunize a transferee from attack either as a preferred creditor or as a fraudulent conveyee, provided timely action is taken by [an] aggrieved creditor." (3 White & Summers, Uniform Commercial Code (4th ed. 1995) § 27-5, p. 254.) Another states that "[o]nce the bulk transfer has occurred, it is too late for the transferor's creditors to reach the goods if the parties have complied with the provisions of Article 6, *assuming, of course, that there has not been a fraudulent conveyance or some other avoidable transaction.*" (6A Hawkland, Uniform Commercial Code Series (1993) § 6-104:10, p. 74, italics added.) The official comment to the Bulk Sales Act states that, ". . . to the extent that a bulk sale is fraudulent and the buyer is a party to fraud, aggrieved creditors have a remedy under the Uniform Fraudulent Transfer Act." (2C West's U. Laws Ann., *supra*, U. Com. Code, Prefatory Note to Revised Art. 6 (Bulk Sales) p. 7.)

The defendants, however, cite *Nicholson* v. *McDonald* (1961) 193 Cal.App.2d 675 [14 Cal.Rptr. 505] for the proposition that compliance with the Bulk Sales Act insulates a transfer from attack as fraudulent. Indeed, they contend *Nicholson* is the *only* case on point as to this issue and is therefore controlling. While *Nicholson* is the sole case we have discovered on this issue, it does not stand for the proposition urged by the defendants. In *Nicholson*, an action for conversion, the defendant, McDonald, had sold a going business to one Houghton and retained a security interest in personal property located on the business premises. Houghton later sold the business to Nicholson, leased it back, and thereafter became insolvent. (193

Cal.App.2d at pp. 676-677.)[5] The sale of the business and its assets to Nicholson was in compliance with the Bulk Sales Law (as then enacted in Civil Code, § 3440.1). (193 Cal.App.2d at p. 677.) In addition, before the sale, Houghton discussed his plans with McDonald and offered to arrange for the amounts owed to McDonald to be satisfied from the sale proceeds, but McDonald declined the offer, stating he preferred to continue receiving monthly payments. (*Ibid.*) McDonald thus had actual notice of the sale and a clear opportunity to protect himself before it took place, and he expressly waived that opportunity. Our decision in this case is thus not affected by dicta in the *Nicholson* opinion to the effect that McDonald had no legal right to the assets transferred by Houghton for the additional reason that Nicholson had complied with the bulk sales laws. (193 Cal.App.2d at p. 679.)

Further, the language and historical background of the applicable statutes militate against any such rule. Before the enactment of the Uniform Commercial Code, California's fraudulent transfer laws and bulk sales laws were part of the same undivided title of the Civil Code, that is, title 2 ("Fraudulent Instruments and Transfers") of part 2 ("Special Relations of Debtor and Creditor") of division 4 ("General Provisions").[6] Nothing in that title suggested its provisions were intended to be mutually exclusive. To the contrary, the statutes which concerned transfers without delivery and bulk sales provided that, unless preceded by notice as required by the statutes, transfers of those kinds were "conclusively presumed fraudulent" and thus subject to the remedies provided for fraudulent transfers generally. (See, e.g., Stats. 1951, ch. 1687, pp. 3884-3886; Stats. 1939, ch. 422, pp. 1756-1757; see also Historical Note, 12 West's Ann. Civ. Code (1970 ed.) former § 3440, pp. 656-658, and Historical Note, former § 3440.1, p. 690.) Although failure to comply with the applicable notice requirements raised a presumption that a transfer without delivery or bulk sale was fraudulent, the statutes furnish no

---

[5]Nicholson's conversion action against McDonald was the last of several proceedings which followed Houghton's business failure. The first was a levy initiated by the State Board of Equalization, after which both McDonald and Nicholson filed third party claims, but the sheriff turned all of the property over to McDonald. (193 Cal.App.2d at p. 677.) Next, Houghton filed a petition in bankruptcy and obtained a discharge. (*Ibid.*) Thirdly, McDonald judicially foreclosed upon property subject to his security interest and purchased the property from the sheriff. (*Ibid.*) It was at this juncture that Nicholson filed his (successful) conversion action, challenging McDonald's right to the property. (*Id.* at p. 678.)

[6]It was not until approximately 20 years after the bulk sales laws were moved to the Commercial Code from the Civil Code that title 2 of part 2 of division 4 of the latter was divided into chapters. (Stats. 1982, ch. 517, §§ 86-88, p. 2330.) At the same time, certain amendments and additions, not material to our discussion, were made in the provisions respecting transfers without delivery, which now form chapter 2 of title 2 (Stats. 1982, ch. 517, §§ 89-92, pp. 2330-2332), and new provisions concerning undertakings by transferees in fraudulent transfer actions were added as chapter 3 of the title. (Stats. 1982, ch. 517, § 93, p. 2332.)

evidence that *compliance* with such requirements gave rise to a presumption, or even an inference, that there was *no* fraud. Nor do the statutes suggest that the giving of notice of a proposed transfer would preclude posttransfer relief to a creditor, provided that the creditor could prove without the benefit of a presumption that a challenged transfer was made without fair consideration and left the transferor insolvent (former Civ. Code, § 3439.04; Stats. 1939, ch. 329, § 6, p. 1668) or with unreasonably small capital (former Civ. Code, §§ 3439.05, 3439.06; Stats. 1939, ch. 329, §§ 7, 8, pp. 1668-1669), or that it was made with an actual intent to defraud creditors (former Civ. Code, § 3439.07; Stats. 1939, ch. 329, § 9, p. 1669).

Neither is there any evidence that when California's bulk sales laws were moved from the Civil Code to the Commercial Code a different relationship with the fraudulent transfer laws was intended. To the contrary, when enacting California's Commercial Code, the Legislature rejected language in section 6-105 of the official text to the effect that a bulk transfer which was not preceded by the required notice would be "ineffective" against the transferor's creditors. Instead, California Uniform Commercial Code section 6105, as originally enacted, provided, as had its predecessor statute (Civ. Code § 3440.1), that such a transfer was "fraudulent and void" against the transferor's creditors, suggesting a continuing interrelationship between California's bulk sales laws and fraudulent transfer laws. (See 23B West's Ann. Cal. U. Com. Code, *supra*, former § 6105 and Cal. Code Com. to former § 6105, pp. 756-757.)[7]

More to the point, the current Fraudulent Transfer Act provides that, unless otherwise expressly provided by statute, other laws of whatever kind which apply to transactions also covered by the Fraudulent Transfer Act *supplement* that act and do not supplant or supersede it. Civil Code section 3439.10 provides: "Unless displaced by the provisions *of this chapter*, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, *or other validating or invalidating cause*,

---

[7]The fact-finding committee charged with reporting on proposals for adopting the Commercial Code commented that section 6105 " 'ma[de] no change in California law unless such a change is effected by the [proposed] use of the word "ineffective" instead of the phrase "conclusively presumed fraudulent and void" in section 3440.1. It is believed that this does not make any change in the California law, since a transfer in violation of the bulk sales law is not actually "void," but only voidable.' " (Marsh & Warren Rep., Sixth Progress Rep. to Leg. by Sen. Fact-finding Com. on Judiciary (1959-1961), pt. 1, The Uniform Commercial Code, p. 510, cited in Cal. Code Com., 23B West's Ann. Cal. U. Com. Code, *supra*, p. 757.)

*supplement* its provisions." (Italics added.) The Bulk Sales Act plainly falls within the scope of that description.[8]

  c. *The Policies Underlying the Fraudulent Transfer Laws and the Bulk Sales Laws Require Independent Application of Both Statutory Schemes*

  Finally, the public policies which animate both the bulk sales laws and the fraudulent transfer laws would be frustrated if each of these statutory schemes did not apply to every transaction described by its provisions, whether or not a particular transaction was conducted in compliance with other applicable statutes. The official comment to the 1962 official text of article 6 (Article 6) analyzed bulk sales laws as targeting two forms of commercial fraud: (1) the fraud of a merchant debtor who sells his stock to a friend for less than its value, pays his creditors less than he owes, and hopes to come back into business "through the back door" later on; and (2) the fraud of a merchant debtor who sells his stock to anyone, including a good faith purchaser, for any price, pockets the proceeds and disappears, leaving his creditors unpaid. (2C West's U. Laws Ann., *supra*, U. Com. Code, Art. 6 [Pre-1989 version] § 6-101, Off. Com., p. 50.)

  The comment noted that the first form of fraud was a kind of fraudulent transfer which was also governed by the Uniform Fraudulent Conveyance Act (since repealed and substantially reenacted as the Fraudulent *Transfer* Act), in which "[n]o change . . . [was] proposed." It was contemplated that the contribution of the bulk sales laws to the problem of *fraudulent* bulk sales would be to add to the after-the-fact remedies available under existing fraudulent transfer laws the "valuable policing measure" provided by Article 6's notice requirements. (2C West's U. Laws Ann., *supra*, U.Com. Code, Art. 6 [Pre-1989 version] § 6-101, Off. Com., p. 50.)

  In the view of the drafters of Article 6, the major bulk sale risk was represented by the second form of fraud reached by bulk sales laws—sales

---

  [8]The current statutes respecting transfers without delivery also contain language that suggests, albeit less directly than the language in Civil Code section 3439.10, that the Bulk Sales Act supplements and does not supplant Civil Code section 3440. Civil Code section 3440.9 provides that "[s]ubdivision 2 of Section 2402 [rights of seller's creditors against sold goods under Division 2, 'Sales'] and subdivision (a) of Section 10308 [special rights of creditors under Division 10, 'Leases'] of the Commercial Code are not restricted by the provisions of this chapter." Inasmuch as the Legislature has specified how Civil Code sections 3440 and following interact with creditors' rights provisions under divisions 2 and 10 of the Commercial Code, and inasmuch as there is no inherent inconsistency between sections 3440 and following and the Bulk Sales Act, the Legislature surely would have specified that the former statutes are superseded by the Bulk Sales Act if the Legislature had so intended.

of all or most of the seller's stock in trade, followed by the seller's absconding with the proceeds. Fraud of this kind was not reached by fraudulent transfer laws, which historically have subjected sold assets to the claims of the seller's creditors only where the transferee actively participated in a scheme to hinder or defraud creditors, took with notice of such a scheme or took for inadequate consideration. (See 6C Hawkland, Uniform Commercial Code Series, *supra*, § 6-101:01, p. 9.) The prevention of this second form of commercial fraud was thus considered to be the central purpose of Article 6. (2C West's U. Laws Ann., *supra*, U. Com. Code, Article 6 [pre-1989 version] § 6-101, Off. Com., p. 50.)

If Konica were correct and compliance with the Bulk Sales Act insulated *any* bulk sale from attack, even if the sale was not for reasonably equivalent value and left the seller insolvent or with unreasonably small assets, and even if the sale was intentionally fraudulent and the buyer knew of or shared the seller's fraudulent purpose, then the broader purpose underlying Article 6—to provide protection for *all* creditors who are damaged by transfers of their debtors' assets—would be frustrated. If the law were as Konica would have it, one class of unprotected creditors would merely be substituted for another. Before bulk sales laws were enacted, no protection was afforded to creditors whose debtors transferred assets to bona fide purchasers for value, and then absconded with the proceeds or rapidly dissipated them. Under the law as Konica would have it, there would be no protection for creditors who suffer actual damage from a bulk sale which is fraudulent under the fraudulent transfer laws, and who historically would have been protected by those laws, as long the parties to the sale formally complied with the Bulk Sales Act. Such a result is inconsistent with the purposes of both the fraudulent transfer laws and the bulk sales laws, and we can imagine no justification for it.

The defendants, however, contend their rule is the correct one, because the California Legislature specifically decided that the recorded and published notice that is required by California's bulk sales laws provides adequate protection to a seller's creditors. It is true that when California repealed former Civil Code section 3440.1 and enacted division 6 of our Commercial Code, the Legislature rejected requirements in the official text that individual notice be mailed to the seller's creditors before any bulk sale (2C West's U. Laws Ann., *supra*, U. Com. Code, Art. 6 [pre-1989 version] §§ 6-104, 6-107, subd. (3)) and concluded that former section 3440.1, which required only recorded and published notice, adequately protected creditors. (23B West's Ann. Cal. U. Com. Code, *supra*, introductory com. to div. 6, Bulk Transfers, p. 735.) However, it is one thing for Legislature to deem

published and recorded notice adequate to fulfill the purposes of the Bulk Sales Act; it is quite another thing to conclude that published and recorded notice is all the protection creditors need against those who would willfully cheat them. ■ The central purpose of the bulk sales statutes is to afford a merchant's creditors an opportunity to satisfy their claims *before* the merchant can transfer his or her assets and vanish with the sale proceeds. (*Reed* v. *Anglo-Scandinavian Corp.* (E.D.Cal. 1969) 298 F.Supp. 310, 313.) Emphasis must be placed upon "before." Article 6 is designed to enable creditors to protect themselves *before* a bulk sale, rather than being forced to seek whatever remedy may remain after the sale has taken place, should the sale result in impairment of a creditor's rights. (23B West's Ann. Cal. U. Com. Code, *supra*, Art. 6 [pre-1989 version], § 6-101, Off. Com., p. 50.) This does not mean, however, that Article 6 was intended to *substitute* for after-the-fact remedies which are otherwise available to injured creditors, or that the Legislature, in adopting Article 6, had any illusion that the published and recorded notice required by California's version of the article would furnish an adequate substitute for such remedies.

■ As the undisputed facts of this case illustrate, it would defy common sense and universal experience to conclude that published and recorded notice of a proposed sale adequately protects a creditor from a fraudulent transfer, unless it were understood that a creditor has an adequate *after-the-fact* remedy for a fraudulent sale if such creditor misses the published and recorded notices and, with them, the opportunity to protect him- or herself before the sale. We presume the Legislature acts in accord with common sense.

The defendants contend, however, that potential buyers in bulk will be discouraged from entering into such transactions and, in this way, the marketplace for going businesses, as well as other bulk sales of business assets will be depressed if the Bulk Sales Act provides no protection against attacks under the fraudulent transfer laws. The defendants further argue that the Bulk Sales Act imposes substantial burdens upon buyers in bulk, and these burdens are justifiable only if balanced by protection from the kinds of claims by a seller's creditors which may be asserted when a sale is not conducted in compliance with the Bulk Sales Act, or simply is not subject to the Act. We cannot agree.

Apart from the obvious fact that only fraudulent transactions will be discouraged, it is the bulk sales laws themselves which have been criticized as imposing unreasonable burdens upon legitimate commercial activity by requiring buyers in bulk to incur costs to protect the interests of sellers'

creditors, and by affording a damaged creditor a remedy against a good faith buyer who paid full value and had no notice of any wrongdoing on the seller's part. (See, e.g., Rapson, *U.C.C. Article 6: Should It Be Revised or "Deep-Sixed"?* (1983) 38 Bus. Law. 1753; Hawkland, *The Trouble With Article 6 of The U.C.C.* (1977) 82 Com. L.J. 113.)[9] However, the criticisms which have been leveled at Article 6 relate to its effect upon legitimate commercial transactions. No further burdens are placed upon *legitimate* bulk transactions by our conclusion that *fraudulent* bulk transactions may be undone by creditors to the same extent as fraudulent transactions in all other forms of property.

The Bulk Sales Act was not intended to, and plainly should not, operate as a shield for fraud. As we have observed, the purpose of bulk sales laws is to afford the fullest possible protection to creditors of persons who fraudulently transfer their stock in trade in bulk, by reaching a category of fraudulent bulk transfers that are not reached by the fraudulent transfer laws, *in addition to those transfers which have historically been covered by such laws.* In order to afford the essentially plenary protection intended by the Legislature, both statutory schemes must apply to bulk sales of stock in trade. The contrary conclusion of the trial court must be reversed.

### 3. *There Are Triable Issues of Fact as to Whether the Challenged Transfers Were Fraudulent*

As noted above, a transfer of assets made by a debtor is fraudulent as to a creditor whose claim arose *before* or *after* the transfer if the transfer was made with an actual intent to defraud any creditor, or was made without receiving reasonably equivalent value and the debtor either (1) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (2) intended to incur, or believed or

---

[9]See also Brines, *Article 6 Bulk Transfers: Thirty Years of Confusion* (1983) 86 W.Va. L.Rev. 29; Kuenzel, *The Bulk Sales Risk—Who Needs Article 6?* (1978) 8 Stetson L.Rev. 1. One commentator has called Article 6 "the article from hell," noting that the article is of "dubious utility" and has always been controversial. (3 White & Summers, Uniform Commercial Code, *supra,* § 27-1, p. 215.) In response to ongoing criticism of Article 6, the National Conference of Commissioners on Uniform State Laws and the American Law Institute in 1989 withdrew their support from it and encouraged states which had enacted Article 6 to repeal it. (2C West's U. Laws Ann., *supra,* U. Com. Code, Official Prefatory Note to Revised Art. 6 (Bulk Sales) p. 7.) Recognizing, however, that bulk sales might present a particular problem in some states and that some legislatures might wish to continue regulating bulk sales, the institute promulgated a revised version of Article 6 for such states and legislatures. Thus, the institute's 1989 recommendation respecting Article 6 included an alternative A and an alternative B. Alternative A was repeal of the article; alternative B was a substantially revised Article 6. California chose alternative B and enacted revised Article 6 effective 1991. (Stats. 1990, ch. 1191.)

reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due (Civ. Code, § 3439.04; *Reddy* v. *Gonzalez, supra*, 8 Cal.App.4th at pp. 122-123); a transfer is fraudulent as to a creditor whose claim arose *before* the transfer if the transfer was made without receiving reasonably equivalent value, and the debtor either (1) was insolvent at the time of the transfer, or (2) became insolvent as a result of the transfer. (Civ. Code, § 3439.05.) As we have also observed, a transfer of most forms of personal property that is not accompanied by delivery and a change of possession is void as against the transferor's creditors unless the transferor or the transferee files with the Secretary of State a financing statement respecting the transfer pursuant to Commercial Code sections 9401 and following and publishes prior notice of the transfer in a newspaper of general circulation. (Civ. Code, § 3440.1.)

■ Here, Monastra's papers in opposition to summary judgment contained substantial evidence from which a trier of fact could find that: (1) at the time of the transfers, Monastra had an existing claim against Master Technology, of which Konica and Digitec were aware; (2) the challenged transfers of Master Technology assets were made with an actual intent to defraud Monastra; (3) Master Technology did not receive reasonably equivalent value in exchange for the transferred assets; (4) Master Technology became insolvent as a result of the transfers; (5) there was no change of possession of the transferred assets; and (6) no financing statement respecting the transfer was filed with the Secretary of State. Monastra has thus established the existence of triable issues of fact as to all of the elements of a fraudulent transfer or a transfer without delivery.

The defendants do not deny any of Monastra's factual claims, nor do they deny that evidence supporting those claims exists. They only argue that any evidence which Monastra might have of fraud in the transfer of Master Technology assets is irrelevant, because the defendants' compliance with the Bulk Sales Act immunizes the transfers from any other challenges. Inasmuch as we have rejected that argument, it follows that triable issues of fact exist as to Monastra's claims under the Fraudulent Transfer Act and Civil Code section 3440, and he has the right to proceed to trial on those claims.

### 4. *Monastra's Remaining Arguments Are Likewise Meritorious*

#### a. *Conspiracy*

Monastra has also set forth evidence which establishes triable factual issues as to his cause of action for conspiracy. The elements of civil conspiracy are the formation and operation of the conspiracy and damage

resulting to the plaintiff. (*Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511 [28 Cal.Rptr.2d 475, 869 P.2d 454].) Standing alone, a conspiracy does no harm and engenders no liability; it must be activated by the commission of an actual civil wrong. (*Ibid.*) The civil wrong alleged in this case is the fraudulent transfer of Master Technology assets, leaving Master Technology unable to satisfy Monastra's judgment. Monastra has adduced evidence that Konica and Digitec, knowing of Monastra's claim against Master Technology, assisted Gorden in making the transfers and in concealing them from Monastra for as long as possible. From this evidence, a trier of fact could find Konica and Digitec participated in a conspiracy to hinder and delay Monastra in his claims against Master Technology, and were thus jointly liable with Gorden for Monastra's damages.

### b.  *Constructive Trust*

█    Likewise, Monastra has set forth evidence which, if believed by a trier of fact, would entitle him to a constructive trust over the transferred assets. The remedies for a transfer that is fraudulent under Civil Code section 3439.04 or section 3439.05 are set forth in section 3439.07. (See fn. 2, *ante.*) These remedies include appropriate equitable remedies, including an injunction against further disposition of the asset, appointment of a receiver, or "any other relief the circumstances may require." (Civ. Code, § 3439.07, subd. (a)(3).) A constructive trust plainly is a proper remedy under section 3439.07, subdivision (a)(3).

### c.  *Statute of Limitations*

Finally, Monastra's claims are not time barred. The statute of limitations for an action for relief from a transfer proscribed under section 3439.04, subdivision (a) (transfer made with intent to defraud creditor), is four years after the transfer or, if later, one year after the transfer was or could reasonably have been discovered by the claimant, up to a maximum of seven years after the transfer (Civ. Code, § 3439.09, subds. (a), (c)); the statute for an action for relief from a transfer proscribed by section 3439.04, subdivision (b) (transfer without receiving reasonably equivalent value and leaving debtor with unreasonably small assets), or section 3439.05 (transfer without receiving reasonably equivalent value and leaving debtor insolvent) is four years after the transfer. (Civ. Code, § 3439.09, subd. (b).) The statute for an action challenging a transfer proscribed by section 3440 is one year after the earliest of: (1) the date when the claimant, in the exercise of reasonable diligence, should have discovered the transfer; (2) the date when the claimant actually discovered the transfer; (3) the date of actual change of possession of the transferred asset. (Civ. Code, § 3440.6.) It is undisputed that the

challenged transfers occurred on July 12, 1990, Monastra first learned of them on September 18, 1992, and his action was filed on July 15, 1993, well within all of the applicable statutes of limitation.[10]

## DISPOSITION

The summary judgment is reversed. The matter is remanded for further proceedings not inconsistent with the views expressed herein. Costs on appeal are awarded to Monastra.

Klein, P. J., and Kitching, J., concurred.

---

[10]The defendants are not, however, precluded from establishing, if they can, that Monastra's action may be barred by laches. Laches is expressly included among those principles listed in Civil Code section 3439.10 as supplementing the Fraudulent Transfer Act. Therefore, although compliance by a buyer in bulk with the Bulk Sales Act does not ipso facto insulate a bulk sale from attack as fraudulent, a remedy under the fraudulent transfer laws may be denied if it is proven that, after receiving notice of a bulk sale, a plaintiff creditor failed, for an *unreasonable* period of time, to take appropriate measures, and the defendant was prejudiced as a result.