Barry A. FISHER, Plaintiff—
Appellant,

v.

LAS VEGAS HILTON CORPORATION,
a Nevada corporation; LVH Corporation, a Nevada corporation; Parball Corporation, a Nevada corporation,
Defendants—Appellees.

No. 01–16278.

D.C. No. CV–00–00549–RLH/LRL.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 2002.

Decided Sept. 18, 2002.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before SCHROEDER, Chief Judge, D.W. NELSON, and REINHARDT, Circuit Judges.

## MEMORANDUM *

Barry Fisher, the plaintiff and appellant, appeals from the dismissal on the pleadings of his action to recover funds allegedly laundered at the defendant casinos. He is a receiver appointed by the Superior Court of California and charged with recovering assets on behalf of duped investors in a fraudulent company, PCO Inc., which was headed by David Laing.

Fisher filed this action against the defendant casinos in the Central District of California. The operative complaint asserts claims under California's Uniform Fraudulent Transfer Act, Cal. Civ.Code §§ 3439, *et seq.* ("UFTA"), and related state law claims. The district court transferred the case to the district of Nevada, which then dismissed the suit in a judgment on the pleadings.

Appellant argues that the district courts erred (1) by transferring the case to Nevada, (2) by granting defendants' motion for judgment on the pleadings, and (3) by denying appellant's motion to amend the First Amended Complaint ("FAC"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand to the district court.

### 1. Transfer

■ "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). Here, the district court for the Central District of California concluded that both it and the District of Nevada had venue and diversity jurisdiction, and that the case could therefore have been brought in either district. Upon motion it then transferred the case to the District of Nevada, citing the convenience of witnesses, the interests of justice, and judicial economy.

Appellant contends this was error, arguing that the district court reached an unreasonable balance of the relevant factors and relied on a clearly erroneous assessment of the evidence. The district court correctly identified the factors to consider in assessing a transfer under 28 U.S.C. § 1404(a). The district court also carefully parsed the evidence within each of eight identified factors it considered, issuing a 27–page opinion justifying its decision to transfer the case. In particular, it considered and weighed the evidence concerning witness convenience and found that "Defendants have sufficiently shown that they have at least a dozen potential material witnesses in the District of Nevada." Of plaintiff's California witnesses,

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

the court noted that several of them appeared to have no knowledge about the specific issues important to this case, namely, the circumstances of the alleged transfers to the casinos. In contrast, it considered the statutory language at issue and noted that the casinos could establish a complete defense through the testimony of its employees, who would likely be material witnesses. Overall, it held that the convenience of witnesses and several other factors favored transfer to Nevada. Appellant objects to the court's consideration of the declaration of Diane Faber. The district court, however, exercised its discretion in considering the Faber declaration despite the fact that it was included with the casinos' reply brief. It did so only after assessing the potential prejudice to Appellant and concluding that it would not be great. In sum, we cannot say that the district court relied on an erroneous view of the law, relied on a clearly erroneous assessment of the evidence, or struck an unreasonable balance of relevant factors when assessing the transfer. *Ravelo Monegro v. Rosa,* 211 F.3d 509, 511 (9th Cir.2000). The district court's reasons are sufficient to support its exercise of discretion in transferring the case.

### 2. Judgment on the pleadings

The district court dismissed all six of the claims within plaintiff's FAC in a judgment on the pleadings. We discuss the six in the order they are discussed by the parties and by the district court.

### A. Claim 2

■ Plaintiff's second claim is brought under UFTA § 3439.04(a), and alleges that transfers from Laing to the casinos were actually fraudulent and voidable. This UFTA section states: "A transfer made or obligation incurred by a debtor is fraudu-

lent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: (a) With actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ.Code § 3439.04(a).

Judgment on the pleadings may be granted only where, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law. *See Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir.1999). Here, plaintiff's second claim suffices to survive a motion for judgment on the pleadings because it alleges the necessary elements under the statute: namely, that Laing (the debtor) transferred money to the casinos with actual intent to hinder, delay or defraud the investor creditors, represented by Fisher, the receiver.

The casinos' argument that the plaintiff failed to allege a transfer must fail, given the extremely broad definition of "transfer" under the UFTA. *See* Cal. Civ.Code § 3439.01(i) At least two types of transfers, and very possibly more, are alleged in the FAC. Taking the complaint's allegations to be true, it cannot reasonably be disputed that Laing transferred money to the casinos when he gambled and lost money to them. Moreover, every dollar gambled by Laing, including those recovered through gambling gains, is also a "transfer." *See* FAC at 20 (alleging $26 million worth of deposits by Laing into defendants' slot machines). As one of our sister circuits has put it well, when a patron gambles he pays money for a "contractual right to receive payment in the event that [the bet] turns out well." *In re Chomakos,* 69 F.3d 769, 771 (6th Cir.1995) (discussing whether transfers at a casino are voidable under Michigan's version of

the UFTA). The moment at which the bets are placed is the moment of transfer. *Id.* at 770–771. Whether Laing's bets were ultimately successful should have no bearing on the conclusion that he transferred his assets to the casinos in order to buy the right to pull the lever.

■ The casinos' alternative argument, namely, that the second claim may be dismissed because the casinos have affirmative defenses, fails because the complaint alleges (and we must take as true) that the casinos knew or should have known the proceeds gambled by Laing were illegal, and provides some support for this allegation. The UFTA provides an affirmative defense to some transferees, preventing actually fraudulent transfers from being voided "against a person who took in good faith *and* for reasonably equivalent value." Cal. Civ.Code § 3439.08(a) (emphasis added). Whether the casinos in fact had enough knowledge to induce a reasonable person to inquire further into the source of the funds is an intensely factual question that should not be resolved on the pleadings. The plaintiff might prove at trial, for instance, that Laing's behavior was so unusual that a reasonable casino employee would have investigated his funding further. The casinos' argument that their affirmative defense was "established on the face of the FAC" must be rejected because nothing on the face of the complaint showed the casinos' good faith; to the contrary, it alleged their bad faith. The casinos carry the burden of proving their good faith under § 3439.08(a).[1] *See Plotkin v. Pomona Valey Imports, Inc.,* 199 B.R. 709, 718–719 (9th Cir.BAP 1996).

We therefore reverse the district court's judgment as to plaintiff's second claim.

### B.  Claims 3 and 4

■ Claims three and four allege that the transfers from Laing to the casinos were constructively fraudulent and voidable under UFTA §§ 3439.04(b) and 3439.05. Section 3439.05 provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Section 3439.04(b) is similar for the purposes of this case, but includes creditors whose claims arose both before and after the transfer.

Under both of these sections, a plaintiff must plead that the debtor (here, Laing) transferred money without receiving a reasonably equivalent value in exchange for the transfer. *Id.* Here, the plaintiff fails to allege that Laing did not receive a reasonably equivalent value for his transfers to the casinos. His attempt to re-read the complaint now to allege a fraudulent transfer from PCO to Laing strains the language of the complaint beyond recognition. We therefore affirm the judgment of the district court as to claims three and four.

### C.  Claim 1

■ In plaintiff's first claim, the receiver alleges that some of the funds transferred from Laing to the casinos are voidable under Cal. Gov't Code § 13975.1. This section provides that a receiver appointed to oversee a defendant's assets may, subject to the direction of a court, avoid transfers of unlawfully obtained property when (1) the transfer is made to one who com-

---

1. We also reject the casinos' argument that, as to this claim, they were "subsequent trans- feree[s] or obligee[s]" under UFTA § 3439.08(a).

mitted unlawful acts or who knew that the property transferred was unlawfully obtained; *see* subd. 4; (2) the transfer was made with actual intent to delay recovery of the property; *see* subd. 5; (3) the transfer was made within a year before the receiver's appointment and less than reasonably equivalent value was given (subject to a limited *bona fide* transferee defense); *see* subd. 6; and (4) the transfer was made within 90 days before the receiver's appointment, and to someone from whom the defendant obtained unlawful property, in some circumstances. *See* subd. 7.[2]

We reverse the dismissal of this claim because plaintiff adequately pled a claim for relief under at least one, and perhaps more, of the subdivisions of this statute. Subdivision 5 provides for avoidance of a transfer when that transfer is actually fraudulent (i.e., when the transfer is made with the intent to delay recovery of the property). The plaintiff here pled all that was required to survive a motion for judgment on the pleadings, namely, that the plaintiff is a receiver charged with mar-

shaling Laing's assets and that Laing transferred unlawfully obtained property to the defendant casinos with "the actual intent to hinder, delay or defraud the creditors of PCO." Any possible defense would involve disputed issues of fact.

Once again, and for the reasons detailed above, the casinos' argument that the plaintiff failed to allege a "transfer" from Laing to the casinos must fail. We also reject the casinos' argument that § 13975.1 cannot stand as an independent basis for avoidance of a transfer because it does no more than duplicate the UFTA claims. This statute is much broader than the UFTA in some respects. For instance, it lacks a *bona fide* transferee defense for actually fraudulent transfers, and it gives receivers remedies for some transfers that would not be covered by the UFTA (e.g., subdivision 7's avoidance of transfers made within 90 days of the receiver's appointment, if such an avoidance would promote a fair pro rata distribution of restitution). We do not find, and the defendants do not give us, any reason to

2. Specifically, the statute states that a receiver for a defendant or a defendant's assets "may do any of the following subject to the direction of the court":

> ... (4) Avoid a transfer of any interest in any unlawfully obtained property including the proceeds thereof to any person who committed, aided or abetted, or participated in the commission of unlawful acts or who had knowledge that the property had been unlawfully obtained.
> (5) Avoid a transfer of any interest in any unlawfully obtained property including the proceeds thereof made with the intent to hinder or delay the recovery of that property or any interest in it by the receiver or any person from whom the property was unlawfully obtained.
> (6) Avoid a transfer of any interest in any unlawfully obtained property including the proceeds thereof that was made within one year before the date of the entry of the receivership order if less than a reasonably

equivalent value was given in exchange for the transfer, except that a bona fide transferee for value and without notice that the property had been unlawfully obtained may retain the interest transferred until the value given in exchange for the transfer is returned to the transferee.
> (7) Avoid a transfer of any interest in any unlawfully obtained property including the proceeds thereof made within 90 days before the date of the entry of the receivership order to a transferee from whom the defendant unlawfully obtained some property if (A) the receiver establishes that the avoidance of the transfer will promote a fair pro rata distribution of restitution among all people from whom defendants unlawfully obtained property and (B) the transferee cannot establish that the specific property transferred was the same property which had been unlawfully obtained from the transferee.

Cal. Gov't Code § 13975.1(b)(4)-(7).

restrict its application to situations in which the UFTA would also apply.

For these reasons, we reverse the district court's dismissal of claim one.

### D. Claims 5 and 6

As all parties agree, the dismissal of claims five and six, which allege constructive trust and breach of contract, must be reversed if any of the other claims is reinstated. *See Monastra v. Konica Bus. Mach.*, 43 Cal.App.4th 1628, 1645, 51 Cal. Rptr.2d 528 (1996); 28 U.S.C. § 1332(a). We therefore reverse the district court's dismissal of these claims.

### 3. Leave to amend

Because we reverse the district court's dismissal of the complaint and remand for further proceedings, we decline to reach plaintiff's alternative argument that it should have been given leave to amend its complaint to cure the deficiencies identified by the district court. As to claims three and four, the dismissal of which we affirm, we decline to hold that the district court abused its discretion in refusing leave to amend these claims.

### 4. Conclusion

We affirm the district court's dismissal of claims three and four. We reverse the district court's dismissal of claims one, two, five, and six, and we remand for further proceedings consistent with this disposition. Each side shall bear its own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).