Cella GUTIERREZ, Abner McKenzie, David Chenot, and Peggy Baker, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

Charles J. GIVENS, Jr., et al., Defendant.

No. Civ. 97–1218–B(LAB).

United States District Court,
S.D. California.

Nov. 5, 1997.

Order Denying Reconsideration,
Jan. 16, 1998.

Ed Gergosian, San Diego, CA, for plaintiff.

Juanita Backs, San Diego, CA, for Reiserer and Chatsky.

James Foster, Orlando, FL, for Colonial Bank.

Knut Johnson, San Diego, CA, for Givens, et al.

Terry Moshenko, Santa Ana, CA, for Tedder.

**ORDER GRANTING DEFENDANT COLONIAL BANK'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, DISMISSING ALL OTHER MOTIONS BY COLONIAL BANK AS MOOT, DENYING ALL OTHER MOTIONS TO DISMISS, AND CERTIFYING A CLASS ACTION PURSUANT TO F.R.C.P.23.**

BREWSTER, District Judge.

### I. Case Type and Jurisdiction

This case is a proposed class action brought on behalf of all class-member judgment creditors in the "Gutierrez Class," as certified in an earlier California state court action. The proposed class seeks to pursue its remedies against defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 and California statutory and common law. Plaintiffs seek treble damages, costs, and attorneys' fees. The Court has subject matter jurisdiction over RICO suits pursuant to 18 U.S.C. § 1964(c), and over the state law claims through supplemental jurisdiction under 28 U.S.C. § 1367.

### II. Background

#### A. The Parties

There are four named plaintiffs and twenty defendants. The named Plaintiffs and the "thousands" of proposed members of the class were members of a state class action suit who obtained judgment against Defendant Charles J. Givens for false statements and misinformation regarding membership in the Charles J. Givens Organization, Inc. Of the twenty defendants, ten are people and ten are corporate entities or trusts. The individual defendants are Givens and four of his family members, four of his attorneys, and his accountant. The organizational defendants include Colonial Bank f/k/a Southern Bank of Central Florida and nine alleged holding companies or trusts controlled by Defendants. Three of these nine defendants had clerk's defaults entered against them in August 1997. Plaintiffs allege that all twenty Defendants participated in a broad conspiracy to protect Givens' alleged millions of dol-

lars of assets from the judgment and other legitimate debts.

### B. The Motions

Four groups of defendants have submitted their own motions.[1] In many cases, Defendants have joined each others' motions. All four groups moved to dismiss for failure to state a claim upon which relief can be granted pursuant to FED.R.CIV.P. 12(b)(6) and for failure to plead fraud with particularity pursuant to FED.R.CIV.P. 9(b). The primary argument made by Defendants is that Plaintiffs fail to state a claim, *per se*, against anyone. Therefore, most of this Order proceeds claim by claim, rather than by defendant. However, issues related to specific defendants are noted separately when appropriate. Defendant Colonial Bank has submitted additional motions to dismiss for lack of personal jurisdiction and improper venue, and has moved for a more definite RICO case statement. Because Colonial's motion to dismiss for lack of personal jurisdiction, if granted, would be dispositive of all claims against it, it will be addressed first.

### C. Factual Background

The proposed class[2] includes all current or former California residents who purchased memberships in the Charles J. Givens Organization, Inc. between May 5, 1986 and March 17, 1993, and who did not opt out of the class action in California Superior Court entitled *Cella Gutierrez, et al. v. Charles J. Givens Organization, Inc., et al.,* Case No. 667169 (Super.Ct., San Diego Cty.) The class in that action claimed that Givens defrauded them through negligent misrepresentations and violated California's Consumer Legal Remedies Act and other statutory and common law provisions. Members paid significant membership fees to join the Givens Organization. According to Plaintiffs' Complaint, new memberships were sold for

$295–998, dues ranged from $80–129 per year, the fee for the four-day real estate seminar ranged from $495–1695, and the prices for tax consulting were between $299 and $570. Plaintiffs allege that, by the end of 1994, the Organization had sold over 600,000 memberships nationwide and enjoyed annual revenues of "several hundred million dollars" from its seminars and other products.

On July 22, 1996, the Superior Court, acting upon the jury's verdict, entered a judgment against Givens personally in the amount of $9,438,027 in compensatory damages, $4,719,013.50 in punitive damages, and $2,889,551.56 in costs and attorneys' fees, for a total liability of $17,046,592.06.[3] Statutory interest continues to accrue at a rate of 10% per annum on the judgment and costs pursuant to C.C.P. § 685.010(a). Givens now claims that he has no assets from which to pay the judgment.

In or about 1990, a civil suit entitled *Beadle v. Charles J. Givens, et al.,* was commenced in the U.S. District Court for the Northern District of Iowa. (Civ. No. C90–143). The suit was apparently founded upon alleged misleading statements made by and on behalf of Givens that led individuals to drop uninsured motorist coverage. Similar lawsuits were filed in other states in 1992 and 1993. Plaintiffs allege that, at some point in 1991 or 1992, Defendants recognized Givens' and the Organization's vulnerability to judgment creditors, and began to conspire to place Givens' assets beyond the reach of these anticipated creditors.

Plaintiffs' Complaint cites numerous transactions and alleged schemes as part of the conspiracy. They allege the involvement of each individual defendant. The Complaint provides dates and dollar amounts of many transactions, and sometimes references specific documents that were probably obtained in discovery from the state court litigation.

---

1. The four groups are: (1) the Givens family members and the Givens Family International Trust, (2) Attorneys Kenneth Reiserer and Michael Chatsky, (3) Attorney David Hamilton Tedder, and (4) Colonial Bank.

2. The class has not yet been certified under FED R.CIV.P. 23. See Section IV of this Order.

3. The Superior Court also granted Plaintiffs' plea for equitable relief under the Unfair Business Practices Act, Bus. & Prof.Code § 17200, et seq., enjoining Givens from repeating the false and misleading statements that formed the basis of the jury's verdict.

Many of the claims focus on Givens' primary attorney, defendant David Hamilton Tedder, a self-proclaimed specialist in "Asset Protection." Tedder was a partner in a small firm with co-Defendants Chatsky and Berends; Defendant Reiserer worked for the firm as an independent contractor. Plaintiffs allege that tens of millions of Givens' assets were transferred from Givens and his Organization to holding companies controlled by Givens, Tedder, or other defendants, and to trusts for the benefit of Givens' family members. Plaintiff alleges that Tedder "has a long history of involvement in swindles" and has been investigated numerous times by the California State Bar and the Internal Revenue Service.

Four Defendants are members of Givens' family. Charles Givens III, Givens' son, was a President and CEO of the Givens Organization and an officer of some of the alleged holding companies. He is also a beneficiary of two foreign trusts allegedly established to shield Givens' assets. Similar allegations were offered against another son, Robert Givens, and Givens' wife, Adena Givens. Finally, the Complaint names Bonnie Givens, Givens' ex-wife, as a participant through her role as bookkeeper of the Organization.

Defendant Colonial Bank f/k/a Southern Bank of Central Florida is a financial banking institution located in Orlando, Florida, Givens' base of operations. The bank allegedly facilitated the asset transfers complained of in this action. Plaintiffs allege that "Givens and his associates hold (or at one time held) substantial stock in Southern Bank and partially control (or controlled) it," and therefore the bank understood the fraudulent purpose of the transfers.

If Plaintiffs' allegations are taken as true, Defendants as a group were clearly involved in a complicated scheme to protect Givens' assets. While some Defendants may have been more or less culpable, or even completely innocent, the complexity of the allegations makes it difficult to differentiate between them on the basis of the record before the Court. While not every Defendant may have been involved in every challenged transaction, Plaintiffs maintain that all Defendants were aware of and participated in the overarching conspiracy. In any case, the Complaint alleges involvement by each Defendant individually at least once.

## III. Discussion

### A. Colonial's Motion to Dismiss for Lack of Personal Jurisdiction

■ Colonial has moved to dismiss the complaints against it for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). Usually, a defendant must have sufficient "minimal contacts" with the forum so that the Court's exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Data Disc, Inc., v. Systems Technology Assoc., Inc.,* 557 F.2d 1280 (9th Cir.1977) (*citing International Shoe Company v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of making "a *prima facie* showing of jurisdictional facts." *Id.* at 1285–86.

Plaintiffs' Complaint makes no assertions that link Colonial to California, other than to associate them with a conspiracy that, as a whole, had California contacts. However, Plaintiffs argue that personal jurisdiction may be invoked under RICO through its provisions for nationwide service of process, and that this Court may exercise *in personam* jurisdiction directly by such service, pursuant to FED.R.CIV.P. 4(e) and RICO section 1965(b).

■ Recognizing the difficulty of choosing a forum for an action against a nationwide racketeering enterprise, Congress enacted 18 U.S.C. § 1965(b):

In any action under section 1964 of this chapter [RICO] in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

The Ninth Circuit found that Congress intended the "ends of justice" provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial. *Butcher's Union Local No. 498, United Food and Commercial Workers et al. v. SDC Investment,* Inc., *et al.,* 788 F.2d 535, 539 (9th Cir.1986). Many courts, including the Ninth Circuit, have found that nationwide service provisions expand the jurisdictional reach of a federal court, and that a nationwide contacts test supplants the traditional forum-contacts analysis of *International Shoe.* See, e.g., *Go–Video, Inc. v. Akai Elec. Co., Ltd.,* 885 F.2d 1406, 1414–1416 (9th Cir.1989).

■ However, before the Court may exercise jurisdiction under § 1965(b), Plaintiffs bear the burden of showing that this case is eligible to invoke the nationwide jurisdictional provisions of RICO. In *Butcher's Union,* the Ninth Circuit held that for nationwide service to be imposed under § 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators. *Butcher's Union,* 788 F.2d at 539. Plaintiffs have not demonstrated that no other district exists in which all Defendants would be subject to jurisdiction. Therefore, personal jurisdiction cannot be established under § 1965(b) at this time.

The Complaint does not allege jurisdiction over Colonial under the California long-arm statute-in fact, the statute is said to be *"irrelevant* to this Court's proper exercise of personal jurisdiction over [Colonial]." Where the Plaintiffs have failed to assert any alternative bases of jurisdiction, the Court declines to do so. See *Butcher's Union,* 788 F.2d at 540.

■ Therefore, this Court cannot exercise personal jurisdiction over Colonial Bank unless Plaintiffs either satisfy the conditions of *Butcher's Union* or establish the requisite jurisdictional facts regarding Colonial's contacts with California. All claims against Colonial are dismissed with thirty days leave to amend. Colonial's other motions to dismiss,

and its motion for a more detailed RICO case statement, are denied as moot.

**B. Defendants' 12(b)(6) Motions to Dismiss**

The remaining defendants all move to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

**1. Standard of Law**

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. This court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). The court need not, however, accept every allegation in the complaint as true; rather, the court "will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian,* 978 F.2d 1115, 1121 (9th Cir.1992) (citation omitted).

**2. Could Plaintiffs' pleadings state a RICO claim against anyone?**

Defendants argue that Plaintiffs fail to state a claim under RICO, 18 U.S.C. §§ 1961–1968 because the Complaint fails to plead the predicate criminal acts, and therefore none of the Defendants, nor anyone else, could be liable.

**a. Governing Law: Civil RICO**

Congress enacted the Racketeer Influenced and Corrupt Organizations Act ("RICO") with the specific intent to "thwart the organized criminal invasion and acquisition of legitimate business enterprises and property." *Oscar v. University Students Co-operative Assn.,* 965 F.2d 783, 786 (9th Cir.1992). Section 1964(c) provides that:

[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district

court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.... 18 U.S.C. § 1964(c). However, federal courts have established that RICO was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar*, 965 F.2d at 786.

The substantive provision of RICO, § 1962, describes the prohibited activities and provides for four different causes of action. Section 1962(a) provides that:

[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). Section 1962(b) provides a cause of action for acquiring or maintaining an interest in or control of any enterprise engaged in interstate commerce using funds from racketeering activity. Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs a pattern of racketeering activity[.]

18 U.S.C. § 1962(c). Finally, section 1962(d) provides a cause of action for conspiring to violate any of the provisions in subsections (a), (b), or (c). The first two counts of Plaintiffs' Complaint allege causes of action under subsections (a), (c) and (d) of § 1962.

### b. Plaintiffs' RICO claims

To state a cause of action under RICO, plaintiffs must establish (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to the Plaintiffs' business or property by the conduct constituting the violation. *See Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985).

RICO, in pertinent part, defines "racketeering activity," as "any act or threat ... which is indictable" under an enumerated list of offenses codified in Title 18 of United States Code and "which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). A pattern of racketeering activity exists when a person commits two or more specified acts ("predicate acts") that have sufficient continuity and relationship so as to pose a threat of continued criminal activity. See, e.g., *Ticor Title Ins. Co. v. Florida,* 937 F.2d 447, 450 (9th Cir.1991). From the list of predicate acts, Plaintiffs allege that Defendants' liability may be invoked from indictable violations of the following Sections: 1341 (mail fraud), 1343 (wire fraud), 1952 (interstate or foreign travel or use of interstate commerce in aid of racketeering enterprises), 1956 (money laundering), and 2314 (interstate transportation of stolen property).

Plaintiffs allege injury because they have been unable to collect the $14.1 million judgment against Givens.

After arguing the requisite racketeering activity and injury, Plaintiffs' Count One asserts that Defendants violated § 1962(a) and (d) by conspiring to derive and deriving substantial proceeds from their racketeering activities and conspiring to use or invest or using or investing such proceeds in the operations of what Plaintiffs allege to be an association-in-fact enterprise, organized to execute Givens' "Asset Protection Plan." Furthermore, Plaintiffs allege that enterprise assets were invested into companies such as Group of Companies that engaged in interstate commerce by conducting Givens' seminars and other activities. Count Two alleges that Defendants violated § 1962(c) and (d) by conducting and participating in the conduct and affairs of the association-in-fact enterprise through the pattern of racketeering described above, and by conspiring to do the same.

### c. Predicate Acts

Defendants argue that, even when the facts are construed in a light most favorable toward Plaintiffs, Defendants could not as a matter of law have committed any of the five

predicate offenses cited by Plaintiffs as a basis for a finding of racketeering.

### i. Mail and Wire Fraud

Defendant argues that the mail and wire fraud statutes in 18 U.S.C. §§ 1341, 1343 only protect vested property rights, citing *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Defendants argue that they cannot be convicted of mail or wire fraud because all of the actions alleged in the Complaint occurred before July 22, 1996, the date of the California Superior Court judgment against Givens, and therefore before Plaintiffs had definite rights to Givens' assets as judgment creditors.

*McNally* was not as much concerned with whether or not the rights were vested, but whether the mail fraud statute contemplated fraud based upon the intangible rights of citizens to enjoy good government. *Id.* at 356, 107 S.Ct. at 2879. The Court recognized that the meaning of the phrase " 'any scheme or artifice to defraud' ... [should] be interpreted broadly insofar as property rights are concerned." *Id.,* quoting *Durland v. United States,* 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896). In *United States v. Feldman,* the Ninth Circuit held that even if concealing money from creditors is not a criminal act in itself, it can support a conviction for mail fraud when it is part of a scheme to defraud. 853 F.2d 648, 654 (9th Cir.1988).

Defendants attempt to distinguish *Feldman* on the grounds that the plaintiff in that case was already a judgment creditor at the time of the alleged racketeering, while Plaintiffs in this case were not. However, Congress' broad intent to protect citizens from fraudulent schemes (See, e.g. *McNally,* 483 U.S. at 356, 107 S.Ct. at 2879) would not be served by this distinction. If Plaintiffs' factual allegations are true, then Defendants knew or should have known that their actions were illegal even as they were committing them. The Plaintiffs were injured by these actions, and should not be barred from recovery merely because time passed before they recognized the situation, organized a lawsuit, and then waited nearly three years for the resolution of their state court suit. If Plaintiffs' allegations are accepted, then throughout the process of Plaintiffs' mobilization and subsequent lawsuit, Defendants were in a position to preempt the danger, and acted to protect Givens' assets in anticipation of judgments such as the one obtained by Plaintiffs. Defendants were on notice throughout the course of these events; had Plaintiffs been aware of the true nature of the Givens Organization from the beginning, none of them would be in front of the Court today.

In the alternative, an argument could be made that the money that was the object of Defendants' alleged "Asset Protection Plan" can be traced in part to the funds provided by Plaintiffs through their membership fees. Misuse of these funds would constitute actionable fraud against Plaintiffs' property rights at the time that the actions in question occurred. Under this view, Plaintiffs' rights were not created by the state court judgment; rather, the state Court judgment merely reflected the rights they possessed since the events in their cause of action occurred. Therefore, Plaintiffs' basis of their RICO claim on allegations of mail and wire fraud will not be dismissed.

### ii. §§ 1952, 1956

To sustain a conviction under § 1952, for racketeering in interstate travel or commerce, or for money laundering under § 1956, the funds used in the alleged scheme must be derived from an unlawful activity. Plaintiffs allege that the large fortune amassed by Givens derived in part from illegal fraud and misrepresentation. Plaintiffs further allege that these unlawfully obtained funds were fraudulently laundered in numerous interstate transactions. Therefore, Plaintiffs can sustain their RICO claims on §§ 1952 and 1956.

### iii. § 2314

It is difficult to imagine a viable foundation for Plaintiffs' RICO claim based upon § 2314, transportation of stolen property. Money obtained through misrepresentations is not stolen, nor are assets that are hidden from creditors. This claim appears to lack merit.

### iv. Conspiracy to Violate RICO

Count Four of Plaintiffs' Complaint alleges liability based upon "a civil conspiracy to violate RICO and the California Fraudulent

Transfer Act." The claim requires the Court to ask whether charges of conspiracy to violate RICO and § 1962(d) of RICO are redundant. Courts have often found that the two claims are distinct insofar as RICO prosecution is permitted after a conspiracy prosecution, because RICO "casts a wider net than traditional conspiracy principles." 18 U.S.C.A. § 1962, n. 91 (West 1984). Because RICO Section 1962(d) includes and is broader than traditional conspiracy, the Court will not consider this claim as a separate basis for relief. The Court interprets Count Four's conspiracy allegations as directed primarily at Plaintiffs' Fraudulent Transfer Act claim.

### d. Conclusion to Question of RICO in the Abstract

Taken as true, Plaintiffs' factual allegations are thorough and disturbing. Plaintiffs have stated a claim, via predicate acts under §§ 1341, 1343, 1952, and 1956, upon which relief can be granted. Federal courts have established that RICO was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar*, 965 F.2d at 786. However, under the generous light of a 12(b)(6) review, Plaintiffs' RICO allegations incorporating mail and wire fraud cannot be dismissed. Therefore, Plaintiffs' RICO allegations could state a claim for relief, and will next be tested against individual defendants.

### 3. RICO Claims as Applied to Individual Defendants

#### a. Attorneys and Accountants

The list of defendants includes four attorneys and one accountant who worked with Charles Givens. Three of the attorneys were the three named partners in the firm Tedder, Chatsky & Berends, and a fourth Defendant, Reiserer, worked for the firm as an independent contractor. According to Plaintiffs' Complaint, the firm worked extensively for Givens. Without saying so, the Complaint infers that the firm served as the equivalent of in-house counsel; Tedder himself was in fact held out to be General Counsel of the Givens Organization. Finally, independent of these attorneys, Gary Case of Anaheim, California, served as an accountant for Givens.

To be liable in civil RICO, "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 184, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). The attorney Defendants cite *Baumer v. Pachl*, in which the Ninth Circuit affirmed a Northern District of California Court's dismissal of a civil RICO claim against an attorney and real estate appraiser for their assistance of an alleged racketeering enterprise. However, the panel noted that, while the fraudulent scheme lasted from 1976 to 1987, the attorney's involvement "did not begin until 1982 and his role thereafter was at best sporadic." *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir.1993).

The *Reves* test, as reiterated in *Baumer*, should be used to determine the potential liability of these five defendants. "RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required." *Baumer*, 8 F.3d at 1344, quoting *Reves*, 507 U.S. at 178, 113 S.Ct. at 1170. The Ninth Circuit has tended toward a narrow interpretation of attorney liability. In *Webster v. Omnitrition Intern, Inc.*, the Circuit affirmed a grant of summary judgment for an attorney defendant in civil RICO who had been involved in a pyramid scheme. While the attorney had more significant involvement with the enterprise, serving as an Assistant Secretary and appearing in promotional videos to vouch for the product, the panel found that Plaintiffs had failed to refute the attorney's assertion that his role was "purely ministerial." 79 F.3d 776, 789 (9th Cir.1996).

■ While the standard for attorney involvement may be difficult to establish later in this action, to survive a motion to dismiss Plaintiffs need only set forth sufficient allegations in a well-pleaded complaint. Plaintiffs clearly cross this threshold for Defendant Tedder, who, they assert, was a central figure, if not the central figure, in planning and operating the entire Asset Protection Plan. Tedder is allegedly an owner, director, or officer of many of the holding companies involved in the scheme. It also appears from

Plaintiffs' Complaint that Tedder stood to reap substantial profits from his activities well beyond any amounts paid as attorney compensation. While there are fewer details about the other defendants, the Complaint alleges that·all of them received Givens' assets into accounts in their own names for the purpose of funneling or laundering them. Chatsky served as a Director of some of the holding companies, and Reiserer apparently moved from California to Florida at Givens' request. The allegations against accountant Case may be the most tenuous, but it is still alleged that he, too, was personally involved in the execution of the scheme, including the funneling of assets through his personal accounts.

In particular, the funneling of assets through personal accounts would appear to state a *prima facie* case for participation in the operation and management of the enterprise under the *Reves* test. Therefore, at the 12(b)(6) stage of analysis, the civil RICO charges against these five defendants·will not be dismissed.

#### b. Other Defendants

While the *Reves* test applies to all defendants, the other Defendants in this case do not have the presumption against involvement enjoyed by the attorneys and the accountant. While Plaintiffs' allegations against some Defendants are minimal, the Complaint does allege that all participated in the operation and management of the conspiracy. The Givens Defendants all had roles in the Givens Organization, and Plaintiff alleges that most or all of them held positions in the shell holding companies. Therefore, Plaintiffs have stated a well-pleaded RICO claim against all of these Defendants.[4]

#### 4. 12(b)(6) Motions to Dismiss State Law Claims

#### a. Jurisdiction over State Law Claims

Because the Complaint properly asserts federal question jurisdiction under RICO, the Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

#### b. Uniform Fraudulent Transfer Act

Count Three of Plaintiffs' Complaint alleges that Defendants' Asset Protection Plan violated the Uniform Fraudulent Transfer Act ("UFTA"), codified in California as CAL. CIV.CODE § 3439 and in Florida as FLA. STAT.T. XLI, ch. 726. Count Four of the Complaint asserts a cause of action for civil conspiracy by all Defendants to violate the UFTA (and, as noted above, RICO). The laws of both states provide:

> A transfer made or obligation incurred by a debtor is fraudulent as to ·a creditor, whether the creditor's claim arose before or after the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> (a) With the intent to hinder, delay, or defraud any creditor of the debtor....

CAL.CIV.CODE § 3439.04 (1996), FLA.STAT.T. XLI, ch. 726.105(1)(a). The laws of the two states are substantially similar,[5] but the Florida statute also includes a list of eleven factors that tend to indicate actionable fraud. Six of these factors are explicitly alleged in Plaintiffs' Complaint:

> (2).In determining. actual intent under paragraph (I)(a), consideration may be given, among other factors, to whether: (a) The transfer or obligation was to an insider. (b) The debtor retained possession or control of the property transferred after the transfer .(c) The transfer or obligation was disclosed or concealed. (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit. (e) The transfer was of substantially all the debtor's assets.... (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.....

FLA.STAT.T. XLI, ch. 726.105(2).

Plaintiffs' Complaint cites these six factors as "badges of fraud," each of which are clear-

---

**4.** It should be noted that the fact that individual Defendants may· be beneficiaries of the alleged conspiracy does not in itself make them liable. To prevail against each Defendant, Plaintiffs must show that they personally participated in ·the organization or management of the conspiratorial enterprise.

**5.** The parties have not emphasized any differences between the statutes, nor do they discuss choice of law issues.

ly established when the allegations are viewed as true for a 12(b)(6) motion. Furthermore, two other factors could possibly be inferred from the Complaint. Subsection (h) is implicated by numerous allegations that assets were transferred for little or no consideration, such as a transfer of $14 million to The Group of Companies ("GOC") in 1995. The Complaint alleges that GOC is owned by a Bahamian corporation, which, in turn is owned by the trustee of a British Virgin Islands trust created for the benefit of Givens and his family. Subsection (k) defines as suspect situations in which "[t]he debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." Plaintiffs' Complaint alleges that, through a chain of transfers, Givens effectively controls a company chartered on the Isle of Guernsey that owns the rights to a lien executed by a British Virgin Islands corporation located in Panama that has attached all of his personal assets, including property, automobiles, securities, etc. Givens apparently still enjoys the use and benefits of these assets without encumbrances.

■ The Givens Defendants have not moved for a 12(b)(6) dismissal of the UFTA claims. Defendants Reiserer and Chatsky, joined by Tedder, argue that liability under UFTA cannot extend to third parties who are neither transferees or transferors of the allegedly fraudulently conveyed assets, citing *Monastra v. Konica Business Machines, U.S.A., Inc.*, 43 Cal.App.4th 1628, 51 Cal. Rptr.2d 528 (1996). Without commenting on their interpretation of *Monastra*, the Court finds this argument insufficient for a motion to dismiss under Rule 12(b)(6), because Plaintiffs' well-pleaded complaint sets forth allegations that each of the attorney Defendants received transfers of Givens' assets into accounts in their own names. Therefore, the Court can not rule out the possibility that these attorneys are transferees under the meaning of UFTA.

Reiserer and Chatsky also argue that none of the remedies created by UFTA under § 3439.07 would be available against them. However, to the extent that they were transferees, the remedy of "avoiding the transfer or obligation to the extent necessary to satisfy the creditor's claim" could apply to them. § 3439.07(a)(1). The Court recognizes that, because of the complex nature of the alleged conspiracy, some Defendants may be in a position later in this case to argue that § 3439.07(a)(1) could have no meaningful application to them. However, the Reiserer and Chatsky motion ignores § 3439.07(a)(3)(C), which permits a court to award "[a]ny other relief the circumstances may require." Their motion has not established that no set of facts could state a claim for relief in light of this provision.

Section 3439.08 excepts *good faith* transferees; to the extent that any Defendants were in fact transferees, it appears unlikely that any would qualify under this exception. Defendants cite *Wyzard v. Goller*, 23 Cal. App.4th 1183, 28 Cal.Rptr.2d 608 (1994), in which the state court refused to impute UFTA liability to a transferee attorney. However, that opinion explicitly rested on the agreement between the parties that the transfer constituted payment for the attorney's services, and that the services had in fact been rendered and payment earned. *Id.* at 1191, 28 Cal.Rptr.2d 608. In this case, viewing the facts in a light most favorable to Plaintiffs, the Court cannot accept any argument that transfers to any Defendants were exclusively good faith payments for services rendered.

Therefore, Defendants' motions to dismiss the UFTA claims are denied.

### c. California Penal Code § 531

California Penal Code § 531 provides that:

Every person who is a party to any fraudulent conveyance ... [made] with intent to deceive and defraud others, or to defeat, hinder or delay creditors or others of their just debts, damages or demands, or who, being a party as aforesaid, at any time wittingly and willingly puts in, uses or avows, maintains, justifies, or defends the same ... is guilty of a misdemeanor.

CAL.PENAL CODE § 531.

While Plaintiffs cannot as a private cause of action enforce this criminal penalty, their claim of civil conspiracy, addressed below, draws support from § 531's inclusion of indi-

viduals who are not themselves direct parties to the alleged conveyances.

### d. Civil Conspiracy Claim

Plaintiffs fourth and final count alleges liability based upon "a civil conspiracy to violate RICO and the California Fraudulent Transfer Act." As noted above, the Court will not consider this claim independently of RICO. However, the Court is free to review civil conspiracy separately from the underlying UFTA claim.

Defendants Reiserer and Chatsky argue that "Plaintiffs' Fourth Cause of Action purports to allege a non-existent claim of 'common law' conspiracy."

However, California courts have explicitly permitted civil conspiracy causes of action in cases involving the UFTA. See, e.g., *Monastra,* 43 Cal.App.4th at 1644–1645, 51 Cal.Rptr.2d 528. The elements of civil conspiracy are the formulation and operation of the conspiracy and damage resulting to the plaintiff. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994) . In *Monastra,* the Court found that there were triable issues of fact as to whether both a debtor *and* a third-party could be liable for conspiracy for an alleged conspiracy to hinder the collection of a judgment creditor's claim against the debtor. Therefore, it is possible for Plaintiffs to attempt to state a claim of conspiracy against all named defendants.

### C. Motions to Dismiss for Failure to Plead Fraud with Particularity

When a complaint alleges fraud, the circumstances constituting fraud must be stated with particularity. Fed.R.Civ.P. 9(b); *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1545 (9th Cir.1994) (en banc); *In re Stac Electronics Sec. Litig.,* 82 F.3d 1480, 1486–87 (9th Cir.1996). The purpose of this rule is to "give defendants adequate notice to allow them to defend against the charge and to deter the filing of complaints 'as a pretext for the discovery of unknown wrongs.'" *Id.* at 1487 (quoting *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985)).

Before discovery, Plaintiffs cannot aspire to know all of the details of an alleged fraud against them. The pleading requirement is designed to thwart baseless complaints and fishing expeditions, and does not require dismissal of complaints in which allegations, if true, start to paint a real picture of actionable fraud. Plaintiffs, presumably aided by discovery in the state court trial, present extensive allegations, often complete with names, dates, and amounts in question. These illustrations satisfy the heightened pleading requirement of Rule 9(b).

Also, the Court notes that the Plaintiffs have submitted a RICO Case Statement pursuant to Local Rule 11.1. As with the fraud pleading requirements, the Court finds that two-prong purposes of these rules, notice to the defendant and the filtering out of meritless complaints, have been satisfied.

Therefore, the Court refuses to dismiss the Complaint under Fed.R .Civ.P. 9(b) or Local Rule 11.1.

### D. Lack of Standing because of Bankruptcy Proceeding

Some defendants have argued that Plaintiffs lack standing to bring this suit because of the pending bankruptcy proceedings of the Charles J. Givens Organization, Inc., now known as International Administrative Services, Inc. The Corporation filed for bankruptcy on June 20, 1996, in the Middle District of Florida.

However, that organization is not named as a defendant in Plaintiffs' Complaint. In the California Superior Court action, Plaintiffs' $14 million judgment was against Charles Givens *personally,* while the Court awarded only $1.00 of nominal damages against the Organization. Plaintiffs are not trying to collect money from the bankruptcy estate. The alleged conspiracy questions the disposition of Givens' personal assets. Therefore, the bankruptcy judge's July 2, 1997 order retaining jurisdiction "all questions concerning the assets or property of [International Administrative Services, Inc.], does not bar this action.

## IV. Certification of Class Action

Plaintiffs' Complaint seeks to proceed as a class action under FED.R.CIV.P. 23. The fact that the proposed class is identical to the one certified by the California Superior Court in the preceding lawsuit has no legal effect on this consideration because this Court is governed by the Federal Rules of Civil Procedure and not California rules, and because this suit arises under different causes of action.

Rule 23(c)(1) states that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be amended or altered before the decision on the merits." FED.R.CIV.P. 23(c)(1).

### A. Standard of Law

FED.R.CIV.P. 23 governs class actions. Rule 23(a) provides four criteria which must be met in order for a class to be certified:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the Rule 23(a) requirements, the proposed class action must also satisfy one of the subdivisions of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3) which requires plaintiffs to show that:

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In determining whether an action is appropriate for class certification, the court need not reach the merits of the action. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 179, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974). The court can consider evidence relevant to the Rule 23 determination even if that evidence is also related to the merits of the case. *Hanon v. Dataproducts Corporation*, 976 F.2d 497, 509 (9th Cir.1992). A court should, however, accept the substantive allegations of the complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

### B. Analysis

Plaintiffs allege that the proposed class is composed of "several thousand" persons. Clearly, the joinder of all of these persons is impracticable, and therefore the numerosity requirement of Rule 23 is satisfied.

Common questions of both fact and law predominate in this action. All class members have similar claims and the questions of law shared by all class members are substantially related to the resolution of the litigation. *Jordan v. Los Angeles County*, 669 F.2d 1311 (9th Cir.1982). If Defendants did in fact illegally hide Givens' assets from judgment creditors, all class members would share identical claims against them. Their claims are therefore typical of the named Plaintiffs, and this Court is faced with the same legal and factual questions for all proposed class members.

Plaintiffs' attorneys can fairly and adequately represent the interests of the class. Their firm, Milberg Weiss Bershad Hynes & Lerach, L.L.P., represented Plaintiffs in the state court action and successfully secured a substantial judgment. Therefore, the requirements of Rule 23(a) are satisfied.

A 23(b)(3) class action is appropriate in this case because common questions of law and fact predominate in this action. Potential class members may opt out of a 23(b)(3) class action. The Court orders Plaintiffs to provide notice of this action to all potential class members who can be identified through a reasonable effort, in accordance with FED.R.CIV.P. 23(c)(2). The Court notes that the several hundred individuals who opted out of the state court action are not potential members of this class because they are not credi-

tors of Givens under the state court judgment.

The Court certifies the proposed class action.

### V. Conclusion

All claims against Colonial Bank are dismissed with thirty days leave to amend for failure to plead sufficient jurisdictional facts. Colonial's other motions are therefore moot. All other motions to dismiss for failure to state a claim upon which relief can be granted are denied. All motions to dismiss for failure to plead fraud with specificity are denied.

IT IS SO ORDERED.

### ORDER DENYING DEFENDANTS REISERER AND CHATZKY'S MOTION TO RECONSIDER

#### I. Case Type and Jurisdiction

This class action is brought on behalf of all class-member judgment creditors in an earlier state court action. The class seeks to pursue their remedies against defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 and California statutory and common law. The Court has subject matter jurisdiction over RICO suits pursuant to 18 U.S.C. § 1964(c), and over the state law claims through supplemental jurisdiction under 28 U.S.C. § 1367.

#### II. Background

Plaintiffs were members of a state class action suit who obtained judgment against Defendant Charles J. Givens for false statements and misinformation regarding membership in the Charles J. Givens Organization, Inc. Of the twenty defendants, ten are people and ten are corporate entities or trusts. The individual defendants are Givens and four of his family members, four of his attorneys, and his accountant. The organizational defendants include Colonial Bank f/k/a Southern Bank of Central Florida and nine alleged holding companies or trusts controlled by Defendants.

The class includes all current or former California residents who purchased memberships in the Charles J. Givens Organization, Inc. between May 5, 1986 and March 17, 1993, and who did not opt out of the class action in California Superior Court entitled *Cella Gutierrez, et al. v. Charles J. Givens Organization, Inc., et al.*, Case No. 667169 (Super.Ct., San Diego Cty.) The class in that case claimed that Givens defrauded them through negligent misrepresentations and violated California's Consumer Legal Remedies Act and other statutory and common law provisions. Members paid significant fees to the Givens Organization for membership, consulting, and seminars. Plaintiffs allege that, by the end of 1994, the Organization had sold over 600,000 memberships nationwide and enjoyed annual revenues of "several hundred million dollars" from its seminars and other products.

On July 22, 1996, the Superior Court, acting upon the jury's verdict, entered a judgment against Givens personally in the amount of $9,438,027 in compensatory damages, $4,719,013.50 in punitive damages, and $2,889,551.56 in costs and attorneys' fees, for a total liability of $17,046,592.06. Givens now claims that he has no assets from which to pay the judgment. Plaintiffs allege that all twenty defendants participated in a broad conspiracy to protect Givens' alleged millions of dollars of assets from the judgment and other legitimate debts.

This action was filed on June 26, 1997. Four groups of defendants filed motions to dismiss. In an Order dated November 5, 1997, the Court denied all but one motion (see footnote), finding that Plaintiffs had stated a claim upon which relief could be granted.[1] The Court also certified the class action pursuant to Federal Rule of Civil Procedure 23. Defendants Reiserer and Chatzky have moved the Court to reconsider its decisions pursuant to Local Rule 7.1(i). None of the other defendants have joined this motion or moved to reconsider.

### III. Analysis

#### A. Motions to Reconsider

Defendants Reiserer and Chatzky have not made this motion pursuant to Rules 59 or 60

---

1. The Court dismissed the Complaint, with leave to amend, against Colonial Bank for lack of personal jurisdiction. Plaintiffs have filed an amended Complaint.

of the Federal Rules of Civil Procedure. Rule 59 addresses procedures for requesting new trials and amendments to judgments that must be made within 10 days. Rule 60(b) provides only for relief from a "final" judgment, which does not exist in this case. Instead, this motion is based on Local Rule 7.1(i) which provides that:

1. Whenever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part . . . and a subsequent motion or application or petition is made for the same relief in whole or in part upon the same or any alleged different state of facts, it shall be the continuing duty of each party and attorney seeking such relief to present to the judge to whom any subsequent application is made a . . . certified statement of an attorney setting forth the material facts and circumstances surrounding each prior application, including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application.

2. Except as may be allowed under Rules 59 and 60 of the Federal Rules of Civil Procedure, no motion or application for reconsideration shall be filed more than 30 days after the entry of the ruling, order or judgment sought to be reconsidered.

This motion to reconsider was filed on December 8, 1997, thirty-three days after the Court's November 5, 1997 order was filed. Therefore, pursuant to Local Rule 7.1(i)(2), this motion is untimely and could be rejected solely on that ground.

Furthermore, Reiserer and Chatzky have failed to indicate any "new or different facts and circumstances" upon which this motion for reconsideration is grounded. As discussed below, their motion regarding Plaintiffs' standing in view of the Givens organization bankruptcy relies on exactly the same arguments and supporting documentation that they submitted in their motion to dismiss, while their motion to reconsider class certification, also discussed below, is premised only on their "surprise" at the Court's action.

Therefore, Defendants Reiserer and Chatzky's motion to reconsider fails to satisfy the requirements of Local Rule 7.1(i). However, the Court will proceed to discuss briefly the merits of their objections.

## B. The Merits

### 1. The Givens Organization Bankruptcy

In their motion to dismiss, Reiserer and Chatzky argued that Plaintiffs lack standing to bring this suit because of the pending bankruptcy proceedings of the Charles J. Givens Organization, Inc., now known as International Administrative Services, Inc. The Corporation filed for bankruptcy on June 20, 1996, in the Middle District of Florida.

The Court rejected this argument, finding that Plaintiffs are not trying to collect money from the bankruptcy estate, and that therefore, the bankruptcy judge's order retaining jurisdiction "all questions concerning the assets or properly of [International Administrative Services, Inc.], does not bar this action.

In the instant motion, Reiserer and Chatzky have reiterated their original argument to the Court. Their motion alleges that "Plaintiffs [are] attemp[ing] to avoid proceeding in the Bankruptcy Court by not naming the Organization as a defendant." Apparently, Reiserer and Chatzky believe that the Court's original ruling is premised on a technicality. Defendants should realize that had Plaintiffs named the organization as a defendant, only the organization would have been considered for dismissal pursuant to the bankruptcy. This suit seeks a legal remedy from the personal assets of each individual defendant, including Reiserer and Chatzky, for their alleged misdeeds in hiding Givens' assets from legitimate judgment creditors. If legal damages are awarded in this case, the funds would not be presented as satisfaction of the judgment against the Givens' Organization. The damages would be an independent means of redress against individuals and entities that allegedly committed serious,

and perhaps criminal, wrongs against Plaintiffs.

Therefore, for the purposes of this action, the bankruptcy proceedings are irrelevant to Reiserer and Chatzky.

### 2. Class Certification

In its November 5, 1997 order, the Court certified the proposed class action on the basis of the pleadings. Rule 23(c)(1) states that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." FED. R.CIV.P. 23(c)(1). Although Plaintiffs' Complaint satisfactorily sets forth compliance with each of Rule 23's requirements, and although the history and facts of this case are highly suggestive that it would proceed as a class action, Reiserer and Chatzky claim that they were "completely surprise[d]" by the Court's certification, and on this ground move the Court to reconsider its decision.

Rule 23 does not require Plaintiffs to move for class certification. A Court is permitted, but hardly required, to invite additional briefing regarding class certification when it is unable to make a "reasonable judgment" on the basis of the pleadings. See *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). If it later becomes clear that the class does not possess the required characteristics under Rule 23, the order "may be altered or amended before the decision on the merits." FED.R.CIV.P. 23(c)(1).

### IV. Conclusion

For the reasons set forth above, Defendants Reiserer and Chatzky's motion to reconsider is DENIED.

IT IS SO ORDERED.